*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| **CHARLES T. C.,** | ) |
| | ) |
|    *Plaintiff* | ) |
| | ) |
| **v.** | )   *No. 1:19-cv-00564-NT* |
| | ) |
| **ANDREW M. SAUL,** | ) |
| ***Commissioner of Social Security,*** | ) |
| | ) |
|    *Defendant* | ) |

***REPORT AND RECOMMENDED DECISION***[1]

  This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in evaluating (i) his subjective complaints, including by mischaracterizing his activities of daily living ("ADLs"), (ii) certain medical opinions, in part as a result of the ALJ's failure to order an updated consultative physical examination, and (iii) his physical residual functional capacity ("RFC"). *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 11) at 4-15. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

  Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2018, Finding 1, Record at 17; that, through his date last insured ("DLI"), he had the severe impairment of a spine disorder, Finding 3, *id.*; that, through his DLI, he had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that, in an eight-hour workday, he could push or pull at medium weight limits, could occasionally stoop, crouch, crawl, and climb ladders, ropes, and scaffolds, but could not work with tools that vibrate or at unprotected heights, Finding 5, *id.* at 19; that, through his DLI, considering his age (45 years old, defined as a younger individual, on his DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 23-24; and that he, therefore, had not been disabled from May 2, 2017, his alleged onset date of disability, through his June 30, 2018, his DLI, Finding 11, *id.* at 25.  The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

*Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Evaluation of Subjective Complaints

The plaintiff first asserts that "[t]he ALJ mischaracterized [his] activities of daily living as representative of a lesser impairment than the record supported" and, "[i]n doing so, . . . failed to properly assess the treatment records of [his] pain management provider which demonstrated the ongoing treatment and impairment that [he] has on a daily basis." Statement of Errors at 4. Yet, an ALJ's evaluation of a claimant's subjective statements "is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). The plaintiff fails to show that deference should not be accorded that evaluation in this case.

The ALJ duly noted that the plaintiff had "alleged that he is disabled due to degenerative disc disease, neuropathy of the feet, obesity, carpal tunnel syndrome, a shoulder impairment, and a chronic pain syndrome which have significantly limited his ability to lift, squat, bend, sit, stand,

walk, reach, use his hands, kneel, hear, climb stairs, remember, concentrate, and complete tasks." Record at 19-20 (citations omitted). However, she explained that she deemed his subjective allegations not entirely consistent with the medical evidence and other evidence of record. *See id*. at 20.

The ALJ found, in relevant part, that the evidence of record indicated that the plaintiff was "capable of performing a wide range of" ADLs, "including caring for his personal needs and hygiene, cooking simple meals, washing and drying dishes, doing small repairs, spot mopping spills, shopping in stores, managing money, paying bills, and driving an automobile[,]" as well as feeding and letting his dog out, letting chickens out of a coop, playing computer games, and watching television "without apparent difficulties concentrating or persisting." *Id*. at 21 (citations omitted).

The plaintiff fails to explain which ADLs the ALJ purportedly mischaracterized, instead contending that his ability to undertake activities in his own home and at his own pace should not have weighed against his testimony that he had significant issues with movements such as lifting, squatting, bending, sitting, standing, and walking. *See* Statement of Errors at 4, 6. He asserts that "'[o]ne does not need to be 'utterly incapacitated' in order to be disabled.'" *Id*. at 5 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

Yet, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 13) at 4, "while a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, . . . an [ALJ] properly may take such activities into consideration in assessing . . . a claimant's allegations," *Rucker v. Colvin*, No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014). *See also, e.g., Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018) (ALJ

reasonably inferred that claimant's daily activities, "including caring for himself and a dog, maintaining his house, and grocery shopping," were consistent with a capacity for light work, consistent with Social Security Ruling 16-3p ("SSR 16-3p"), which "expressly requires that the ALJ consider an applicant's daily activities to evaluate the intensity, persistence, and limiting effects of an individual's symptoms") (citation and internal punctuation omitted). In this case, as well, the ALJ reasonably deemed the plaintiff's ability to engage in a wide array of ADLs inconsistent with his allegations of disabling symptoms and limitations. *See* Record at 21, 23. She did not suggest that the plaintiff needed to demonstrate that he was incapacitated to prove disability. *See id*. at 19-21, 23.

The plaintiff next faults the ALJ for characterizing his treatment as "'conservative care'" although "it involved regular assessments and narcotic medi[c]ation therapy." Statement of Errors at 5 (quoting Record at 21). Yet, the ALJ recounted that, following the plaintiff's alleged onset date of disability, he had "required and received . . . physical therapy, epidural steroid injections, and medication management for his back pain[,]" including, as of November 2018, Advil and Hysingla. Record at 21. She concluded, however, that the evidence "fail[ed] to demonstrate that the [plaintiff] ha[d] suffered significant ongoing adverse side effects from these medications," and that he had "told examiners on multiple occasions in 2017 and 2018 that his pain medications [were] helpful for his chronic pain symptoms." *Id*. (citations omitted). The plaintiff does not challenge these key findings. *See* Statement of Errors at 4-6.[2]

---

[2] The plaintiff likewise does not challenge the third basis on which the ALJ discounted his subjective allegations: that they were inconsistent with objective findings on testing and examination. *See* Record at 20 (recounting that, despite the plaintiff's severe impairment of degenerative disc disease and findings of painful lumbar range of motion, muscle spasms, difficulty squatting and rising, and a mildly antalgic gain, he had "remained neurologically intact on examinations with full lumbar range of motion, negative straight leg raising tests, and no atrophy, decreased strength, or significant motor, sensory, or reflex loss" and, despite his reports of neck pain, "radiographic studies of the cervical spine performed on June 13, 2017 showed only early discogenic and degenerative changes, and magnetic resonance imaging studies of the neck have been reported to have been unremarkable") (citations omitted).

In sum, the ALJ provided specific reasons for discounting the plaintiff's subjective allegations that he does not undermine. Her decision to discount those allegations, accordingly, is entitled to deference.

### B. Weight Given to Experts' Opinions

Absent a material error in an ALJ's resolution of conflicts in the evidence, including the expert opinion evidence of record, this court defers to an ALJ's weighing of such evidence – the core duty of an ALJ. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand.").

The plaintiff contends that the ALJ erred in (i) relying on the opinions of two agency nonexamining consultants who did not have the benefit of review of later-submitted evidence, (ii) failing to give great weight to the opinion of his treating provider, which he maintains was consistent with the overall record, and (iii) substituting her lay opinions for those of experts in matters not susceptible to common-sense judgments. *See* Statement of Errors at 7-11. I find no material error. The plaintiff's bid for remand on these bases, accordingly, amounts to an invitation to the court to reweigh the evidence, which the court must decline.

### 1. Agency Nonexamining Consultants

The ALJ found the RFC opinions of agency nonexamining consultants Benjamin Weinberg, M.D., and Archibald Green, D.O., "persuasive[,]" explaining:

6

> These assessments are generally well supported and consistent with the record as a whole which shows that the [plaintiff]'s only severe medically determinable impairment is degenerative disc disease, and that examiners have noted only painful range of motion, muscle spasms, difficulty squatting and rising, and a mildly antalgic gait. The [plaintiff] has remained neurologically intact on examinations with full range of motion, negative straight leg raising tests, and no atrophy, decreased strength, or significant motor, sensory, or reflex loss and has sought and received only conservative care in the form of physical therapy, epidural steroid injections, and medication management for his spine disorder since the alleged onset date. While neither Dr. Green nor Dr. Weinberg actually examined the [plaintiff], they did review all of the medical evidence available at the time, and both are experienced medical consultants who are familiar with the Social Security Administration's rules and regulations. The evidence received since they rendered their conclusions could not reasonably be expected to significantly alter these assessments. The undersigned has therefore found these assessments to be persuasive.

Record at 23 (citations omitted).

The plaintiff first argues that the ALJ "failed to offer supporting evidence as to why" the opinions of Drs. Weinberg and Green "were more persuasive than those offered by [his] treating sources." Statement of Errors at 7. However, the ALJ cited exhibits in support of that finding, *see* Record at 23, and the plaintiff fails to develop this argument further, *see* Statement of Errors at 7-9, effectively waiving it, *see, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citations omitted).

The plaintiff next contends that the ALJ's reliance on the Weinberg and Green opinions was misplaced because they did not have the benefit of review of "substantial" later-submitted evidence. *See* Statement of Errors at 7-9. He asserts that Drs. Weinberg and Green did not see "almost a year of evidence from MaineGeneral Physiatry and MaineGeneral Physical Therapy, both sources providing a substantial view of Plaintiff's functioning during the latter part of the

7

period of disability addressed by the ALJ[,]" *id*. at 7, and that Dr. Weinberg lacked the benefit of review of the opinion of treating source Yusuf Abdi, PA-C, which Dr. Green discounted based on the findings of agency examining consultant Fred Fridman, D.O., whose examination was so limited that the plaintiff requested that he be examined by a different agency consultant, *see id*. at 9.

However, as the commissioner notes, *see* Opposition at 10-11, and the plaintiff's counsel conceded at oral argument, the plaintiff did not "specify what it is about or within each such exhibit that would require the state-agency physicians to come to different conclusions[,]" *Bourret v. Colvin*, No. 2:13-cv-00334-JAW, 2014 WL 5454537, at *4 (D. Me. Oct. 27, 2014). The sheer volume of unseen evidence, standing alone, does not undermine an ALJ's reliance on an agency nonexamining consultant's opinion. *See, e.g., id*. ("the mere presence in the record of [unreviewed] medical records" does not require remand). The plaintiff, thus, falls short of calling into question the ALJ's conclusion that this unseen evidence did not undermine reliance on the Weinberg and Green opinions.

That Dr. Weinberg did not see the Abdi opinion does not provide a basis for remand, both because Dr. Green had the benefit of review of that opinion and because, as discussed below, the ALJ supportably discounted it. *See, e.g.*, *Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *8-9 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Mar. 5, 2009) (no error in reliance on opinions of agency nonexamining consultants when unseen treating source opinions reflecting greater restrictions were supportably rejected by ALJ). Dr. Green, in turn, supportably deemed the limitations assessed by Dr. Abdi (mistakenly referred to as Andrew Thomas Dawson, the plaintiff's counsel) "in excess" of the "essentially normal" examination findings of Dr. Fridman. Record at 94; *compare id*. at 316-17 (Fridman findings on October 5, 2017, examination) *with id*.

8

at 474-79 (Abdi opinion dated December 14, 2017, assessing, *inter alia*, ability to lift/carry less than 10 pounds, stand and/or walk for less than two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday).

Finally, as the commissioner argues, *see* Opposition at 17, the ALJ did not impermissibly construe raw medical evidence in concluding that evidence unseen by Drs. Weinberg and Green did not call into question their conclusions, *see, e.g.*, *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. 2013) ("While an [ALJ] is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material[.]") (citation and internal quotation marks omitted).

Remand, accordingly, is unwarranted based on the ALJ's treatment of the Weinberg and Green opinions.

### 2. Abdi Opinion

The ALJ deemed the Abdi opinion "unpersuasive[,]" explaining that "[t]he extreme degree of limitations cited is not supported in Mr. Abdi's contemporaneous treatment records, and is inconsistent with the evidence as a whole." Record at 22. She noted, as she had in explaining the weight given to the Weinberg and Green opinions, that the plaintiff's only severe medically determinable impairment was degenerative disc disease of the spine, that he had sought and required only conservative care, and that, while he had been noted to have painful range of lumbar motion, muscle spasms, difficulty squatting and rising, and a mildly antalgic gait, other findings on examination had been negative. *See id*. She added:

9

> Mr. Abdi is a physician's assistant and the [plaintiff]'s primary care physician, but he appears to have based his opinion in large part on the [plaintiff]'s subjective allegations, particularly where his December 12, 2017 treatment notes indicate that the visit was for the purpose of filling out the [plaintiff]'s SSI paperwork.

*Id*. (citations omitted).

The plaintiff asserts that (i) "'[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them[,]'" Statement of Errors at 10 (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)), (ii) the opinions of treating sources generally are entitled to more weight than those of non-treating sources, *see id*. (citing 20 C.F.R. § 404.1527(c)(2)), (iii) PA-C Abdi had seen him for almost a year and a half and had the benefit of review of other MaineGeneral records as of the time he provided his opinion, *see id*. at 11, and (iv) the ALJ wrongly characterized his treatment as conservative, *see id*.

As a threshold matter, the plaintiff fails to come to grips with the ALJ's key finding: that the extreme limitations assessed by PA-C Abdi were inconsistent with the evidence as a whole, including evidence demonstrating the existence of only one severe impairment and many negative findings on examination. *See* Record at 22; Statement of Errors at 9-11. This, alone, constituted an adequate reason to reject his opinion. *See, e.g*., 20 C.F.R. § 404.1520c(b)(2), (c)(1)-(2) (supportability and consistency "are the most important factors" considered in determining the persuasiveness of a medical source's opinion; "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" it will be); *Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (inconsistency between a physician's treatment notes and his or her opinion, and the fact that an opinion "appear[s] on [its] face to be based primarily on the plaintiff's subjective allegations of pain[,]" are "well-recognized bases in Social Security law for rejection of a treating physician's conclusions").

Second, as the commissioner notes, *see* Opposition at 15, unlike in *Lester*, in which the ALJ found it "significant that [the doctor's] reports 'were clearly obtained by the claimant's attorney for the purpose of litigation[,]'" *Lester*, 81 F.3d at 832, the ALJ in this case did not discount the Abdi opinion on the basis that the purpose of the plaintiff's visit was to have SSI paperwork completed but, rather, because PA-C Abdi appeared to have based the assessed limitations in large part on the plaintiff's subjective allegations, as underscored by the visit's purpose, *see* Record at 22.

Third, the plaintiff's reliance on 20 C.F.R. § 404.1527 is misplaced. For claims filed on or after March 27, 2017, that regulation was superseded by 20 C.F.R. § 404.1520c, pursuant to which the commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The instant claim was filed on July 10, 2017. *See* Record at 15.

Fourth, while PA-C Abdi's treating relationship with the plaintiff and access to other MaineGeneral records weighed in favor of adoption of the Abdi opinion, they did not compel its adoption in the face of factors the ALJ supportably found cut against it, including its inconsistency with the record as a whole.

Fifth, and finally, while the plaintiff contests that his treatment fairly can be characterized as "conservative," he neither disputes the ALJ's description of it as consisting of "physical therapy, epidural steroid injections, and medication management since his alleged onset date[,]" Record at

22, nor explains how that course of treatment supports PA-C Abdi's assessment of limitations, *see* Statement of Errors at 11.³

Remand, accordingly, is unwarranted on the basis of the ALJ's handling of PA-C Abdi's opinion.

### C. Failure to Order New Physical Examination by Agency Consultant

The plaintiff next argues that the ALJ erred in failing to order a new physical examination in response to his complaint that Dr. Fridman had spent only five minutes with him, an insufficient amount of time to provide valid data, as a result of which he requested a physical examination "with a different physician in a manner reasonably calculated to lead to actual, usable data." *Id.* at 12.

The plaintiff cites no authority for the assertion that the ALJ was required to obtain an additional consultative examination upon his request. To the contrary, "[a]n administrative law judge has discretion regarding whether to order a consultative examination." *Rudge v. Astrue*, No. 1:11-cv-440-DBH, 2012 WL 5207591, at *2 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 22, 2012); 20 C.F.R. § 404.1517 ("If [a claimant's] medical sources cannot or will not give us sufficient medical evidence about [his or her] impairment for us to determine whether [he or she is] disabled or blind, we *may* ask [him or her] to have one or more physical or mental examinations or tests.") (emphasis added).

A failure to order such an examination does not constitute an abuse of discretion unless the examination was necessary to enable the ALJ to determine disability. *See, e.g., Bishop v. Barnhart,* 78 F. App'x 265, 268 (4th Cir. 2003) ("[A] consultative examination is required when

---

³ The plaintiff asserts that "the record shows that he tried and failed multiple medications, and sought additional referrals for neurology and rheumatology to address numbness, tingling, and extremity pain." *Id.* However, he neither provides citations to the record in support of those propositions nor explains how they undermine the ALJ's finding that the Abdi opinion was unpersuasive.

the evidence as a whole is insufficient to support a decision."); *McCuller v. Barnhart,* 72 F. App'x 155, 160 n.5 (5th Cir. 2003) ("[T]he ALJ's duty to undertake a full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.") (citation and internal punctuation omitted).

Because a further consultative examination was not necessary to the determination of disability, the ALJ having supportably relied on the Weinberg and Green opinions, remand is unwarranted on the basis of this point of error.

### D.  RFC Assessment

The plaintiff, finally, asserts that the the ALJ's conclusion that he "could perform medium work with occasional stooping, crawling, and climbing of ladders, ropes, and scaffolds" is unsupported by "[t]he weight of the evidence when combined with the opinion of Plaintiff's treating source Yusuf Abdi[.]"  Statement of Errors at 13.  He points to both raw medical evidence and the Abdi opinion in support of the proposition that he was limited to a sedentary RFC with less than two hours of standing and six hours of sitting and a need to alternate sitting and standing at will.  *See id*. at 14-15.  He argues that, because the ALJ transmitted a flawed RFC in her hypothetical question to the vocational expert present at his hearing, the ALJ's Step 5 finding that he was capable of performing work existing in significant numbers in the national economy is unsupported by substantial evidence.  *See id*. at 15.

This final point of error is unavailing for the reasons discussed above: the ALJ supportably relied on the opinions of Drs. Weinberg and Green and rejected that of PA-C Abdi in determining

the plaintiff's RFC. The raw medical evidence on which he relies does not, in itself, compel a conclusion that he was limited to a sedentary RFC with the above-described restrictions.[4]

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of September, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] The plaintiff asserts, for example, that he had difficulty with repetitive motions, a decreased range of motion in his lumbar and cervical spine, pain in the right side of his neck when bending, pain with sitting, standing, walking, pushing, or pulling, tenderness in his right trapezius, and heel pain, and that he had difficulty with medication management due to its sedating effects and, yet, still experienced pain in his neck, back, and feet despite his medication. *See* Statement of Errors at 14. The commissioner notes, however, that Drs. Weinberg and Green expressly considered many of these reported symptoms. *See* Opposition at 19; Record at 80, 92-93.